## Fry *vs* Breckinridge.

TRESPASS.

ERROR TO THE FAYETTE CIRCUIT.

*Rents. Distress warrants. Tender. Executor and heir.*

*Case 10.*

JUDGE MARSHALL delivered the opinion af the Court.

*September 19.*

*Case stated.*

THIS action of trespass was brought by Breckinridge, to recover, under the 3d section of the act of 1748, concerning rents, &c. (*Stat. Laws*, 1352,) double the value of a parcel of hemp, his property, which had been taken under a distress warrant for rent, when none was due and in arrear. But the declaration contains a second count, *de bonis asportatis*, without reference to the statute.

The defendant pleaded not guilty, and also that the plaintiff, as her tenant, was indebted to her on the 31st day of December, 1844, the sum of $37 50, for rent in arrear, &c., which he refused to pay, and that on that day she procured a warrant, &c., which was levied, &c. The plaintiff for replication to the second plea, denied that he was indebted to the defendant for rent in the sum of $37 50 on the 31st December, 1844. And issues being joined, the law and fact was submitted to the Court without a jury.

It appeared in evidence, that the plaintiff was tenant of the defendant for one year, commencing on the first day of January, 1844, at a rent of $150, payable quarterly; that after sun down on the 31st of December, 1844, the defendant applied for, and obtained the distress warrant, which was written by candle light; and that by her direction, it was immediately, on the same evening, levied on a parcel of hemp on the demised premises, which was spread out on the ground for the purpose of being rotted; that the plaintiff, with his family and furniture, removed from the premises on the evening of the 31st of December, and was removing when the warrant was levied, it being then dark, but that his stock remained until after the sale, made under the warrant. It was further proved, that at the sale no person would bid for less than the whole lot or parcel of hemp,

The facts appearing in evidence.

which was sold at a fair price, for $81, of which $40 61 was the excess above the rent due, with interest and costs; and that for this excess a bond was taken, with security, payable in three months to the plaintiff, Breckinridge. A receipt from the defendant, by her agent, was also exhibited and proved, which, bearing date October 3d, 1844, acknowledged payment of $37 50, "for the quarter's rent due the first instant.."

This being the substance of all the testimony, as presented in the bill of exceptions, the Court gave judgment against the defendant for $162, being precisely the double of the sum for which the hemp sold, and which was proved to be its value. So that if the judgment should be enforced, Breckinridge will get $162 by the judgment, and $40 60 from the sale of the hemp, besides the payment of his rent of $37 50, making in all $240 10 for the seisure and sale of his hemp worth $81.

The bill of exceptions concludes with the statement, "and this being all the testimony in the case, the defendant excepts to the opinion of the Court, and prays, &c." But the bill of exceptions states no opinion of the Court, and the exception should perhaps be regarded as being taken to the judgment. It does say, however, immediately before the conclusion just recited, and immediately after the detail of the evidence: "The only question under these facts is, whether the distress warrant was legally issued and levied on the day as set forth. And if the Court of Appeals shall be of opinion that it was improperly issued, they will reverse the case, and if otherwise, they will affirm, and to present this point, this bill of exceptions has been agreed."

It is apparent upon the face of the record, and is in effect conceded in the argument, that the judgment is based upon the third section of the act of 1748, which in the cases to which it applies, gives to the person whose property is distrained and sold, an action of trespass or on the case, and double the value of the goods and chattels so distrained and sold. It may be true that the counsel on both sides, between whom the bill of exceptions was agreed, concurred in the opinion that the application of the statute to the case, depended solely upon the ques-

tion whether it was legal to issue and levy the warrant at the precise time when it was done; and that although the illegality may have consisted entirely in the fact that it was premature, by a few hours; and although the levy might have been lawful if made on the next day, yet the statute, by its inflexible mandate, gave the action and the double value. It is also probable that this point being conceded by the counsel, may not have been discussed, and was neither considered nor formally decided by the Court. But it is nevertheless equally true, that the question of the application of the statute is in fact and necessarily involved in the judgment for which there is no reasonable ground, unless it can be sustained by the statute.

Are we then precluded by the restrictive clause in the bill of exceptions, from enquiring into the applicability of the statute to this case? And must we, upon deciding that the issuing and levy of the distress warrant were illegal, affirm a judgment founded upon an application of the statute, though we should be clearly of opinion that notwithstanding the illegality of the distress, the statute is not applicable to the case, or that if it were applicable the judgment is for too much? If we are bound by the restrictive clause to decide the case upon a partial decision of the question of law arising on the facts and embraced in the assignment of errors, it might perhaps be insisted that we should adhere to the letter of the clause. And according to its letter, we are required to reverse if we shall think the distress warrant was improperly issued, &c. As the judgment was certainly based upon the opinion that the distress warrant was illegally issued and levied, we are thus required to reverse if we concur in opinion with the Circuit Judge on the only point which we are to decide; and on the other hand, we must affirm if we think he erred. This is obviously a mistake, and should, as such, be disregarded; and so must we disregard the presumed misconception of counsel in supposing that this case rested on the single question of the illegality of the distress itself, or that by stating that, as the question on which reversal or affirmance was to depend, other questions essential to the decision, and plainly arising on the facts, were to be disregarded.

FRY
vs
BRECKINRIDGE.

This Court is not to affirm a judgment of a circuit court upon one point made and discussed in that court, though it concur with that court, when there are other points clearly against the judgment.

A distress warrant cannot issue or be levied until the day after the rent falls due. (*Hardin*, 297; *Thomas' Coke*, 254, *note C.*) But it may be made after the rent falls due, according to the statutes now in force, of both England and Ky. or before under the particular circumstances pointed out, (2 *St. Laws*, 1352,) not existing in this case.

Upon the question as to the legality of the distress when made, we are of opinion that whether the rent was due on the 31st of December, 1844, or on the 1st of January, 1845, it was unlawful to issue and levy the distress warrant upon the 31st. It is an ancient and well settled principle of the law of distress for rent, that distress cannot be made until the day after the rent falls due: *Gano* vs *Hart*, (*Hardin's Rep.* 297; 3 *Thomas' Coke*, 254, *note C.*) In the book last cited, page 255, 47 *b*, it is said in the text: "But it is to be observed, that for rent due the last day of the term, the lessor cannot distrain, because the term is ended;" and in note 1, to this passage by Hargrave, the reason or proof is given: "For one cannot distrain the same day the rent grows due, but it must be the day after: (21 *H. b.* 40 *Vid.* 14 *H.* 4, 31, *Hal. Mss.* On this account as intimated in the text, some lessors reserved the last half years' rent at some day before the end of the term, so that there might be a distress. To obviate the inconvenience arising from the combined operation of the two principles, that distress could not be made on the day the rent falls due, nor after the expiration of the term, modern statutes both in England and here, have extended the time of making distress, so that the right of making it is in no degree affected, though the opportunity of exercising it may be lost, by the expiration of the term. But this extension of the time of making distress did not authorize it to be made at an earlier period than was before lawful; and it is only under particular circumstances that the landlord is authorized by statute to seize the goods of his tenant by way of attachment or distress, before the time of payment arrives: see 7th and 8th section of the act of 1748, (2 *Stat. Laws*, 1353.)

We do not understand this case as being brought within the statutory provision for making distress before the rent is due, and are, therefore, of opinion, upon the authorities above cited and others, (*Com. Dig. Dristress, A.* 2; 1 *Saund.* 287,) that the issuing of the distress warrant on the 31st of December was premature, and that the levying of it on that day, which constitutes the taking complained of, was illegal.

It is also laid down by Coke and other authorities, that distress for rent cannot be made in the night, but in the day time: (3 *Thomas' Coke*, 254, 142 *a*,) which in note C, same page, is said to be between sun rise and sun set: (*Mirr. C.* 2; *S.* 26, *and* 7 *Co* 7 *a.*) And this, as the note says, to give the tenant an opportunity of preventing the distress by tendering the rent. If then it were true that the rent became absolutely due and payable at sun down on the 31st day of December, and even if distress could be legally made on the same day on which the rent became due, it could not properly have been made in the night, unless under some special circumstances, and mode of proceeding which might authorize it. The law does not, in general, authorize a division of the day, by which the ordinary remedies for coercing a debt may be commenced on any part of the day on which it falls due. In the present case, we are clearly of opinion that as the lease commenced expressly on the 1st day of January, and was for one year, it expired precisely at the end of the year, that is, at midnight of the last day. And it would seem that the rent being to be paid quarterly, without other designation of time, it was due at the expiration of each quarter, that is, at the last moment of the last day. In *Duppa* vs *Mayo*, (1 *Saunders*, 287,) Lord Hale said, "that although sun set was the time appointed by law to demand rent, to take advantage of a condition of re-entry, and to tender it to save a forfeiture, yet the rent is not due until midnight." And further, "if the lessor seized of the fee, die after sun down and before midnight, his heir and not his executor, shall have the rent." And although this position of Lord Hale's with respect to the consequences of the lessor's death, is said to have been denied or disputed, the note, (1 *Saund.* 288, *c. note*, 17,) shows that, in the opinion of Williams, the learned annotator on the text, the cases referred to do not contradict the position. A comparison of the authorities upon this particular point, would carry us greatly beyond the limits of the present case, in which it is not absolutely necessary to determine the prior question, whether the rent was due at sun down or not until midnight, since in either case, no distress could properly be

FRY
*vs*
BRECKINRIDGE.

Distress for rent may not be made in the night, (3 *Thomas' Coke*, 254, *and* 142 *a*,) between sun rise and sun set, (*Ib.* note *C. page last cited*,) that tenant may have an opportunity to tender the rent.

made until the next day. We would remark, however, that the fact that sun down on the last day is fixed by the law, as the proper time for a demand or tender, when the one or the other is necessary to give a right of entry, or to save a forfeiture, does not necessarily prove that the rent is to be considered, (for all purposes at least,) as being due at sun down. If it were certainly not due until midnight, still as the demand or tender could not be made conveniently at that very moment, and as, moreover, the night, that is, the interval between sun down and sun rise, seems to have been regarded as an unreasonable and inconvenient time for either demanding or offering payment, the necessity of making the demand or tender about sun down on the last day, or about sun rise on the following day, as the points of time nearest to the precise moment when the rent falls due, would seem to be obvious, and the greater safety in making the demand or tender before, rather than after the precise moment, would seem naturally to lead to the practice and to account for the requisition by which sun down on the last day is fixed on as the proper time for a demand or tender of rent, and especially as the presumption would be, that if it remained unpaid at sun down, it would not be paid before or at midnight. Then as the rent is payable for past use and occupation, which constitute the consideration, the natural conclusion would seem to be, that as a mere debt or pecuniary demand, it would not become absolutely due and enforcible until the full expiration of the period for which it is payable, and, therefore, is not coercible by action or distress until the day after. But however this may be in point of reason, distress for rent in the ordinary form, is not in point of law, allowable until the day after that on which it falls due, and therefore, the distress, that is, the seizure in this case, was illegal, and may have constituted a cause of action for the recovery of damages.

But the mere illegality of the distress, is not sufficient to bring the case within the third section of the act of 1748, which fixes double the value of the goods distrained, as the criterion of recovery. That section enacts, "that in case any distress and sale shall be made under

The mere fact that a distress for rent was *illegal* within the 3d sec. of the statute of 1748, does not authorize

color of this act, for rent pretended to be in arrears and due, when in truth no rent is in arrear, or due," &c., the party shall have remedy, &c., "and shall recover double the value of the goods and chattels so distrained and sold." It is only where there is a sale as well as a distress, no rent being due, that this remedy and recovery are given. In this case, the rent was certainly due before the sale, and as has been seen, it is a nice and difficult question whether it was not due before the distress was made. The statute applies to cases in which a distress and sale are made for rent pretended to be due, when in fact there is no rent due. It does not apply to a case in which there is a real and not a pretended or fraudulent claim of rent, and a mistake of a few hours as to the time when the rent was due, or when the proceeding by distress might be initiated. In its letter it does not apply to a case in which the rent claimed is due before the sale under the distress. And if it had given the remedy in a case of a distress only, without reference to the sale, we think it doubtful whether it should be applied in a case in which the rent distrained for is actually due on the day on which the distress is made, and might have been demanded or tendered, (if these acts had been essential,) before the warrant was levied or even issued. Such a case would not be within the spirit of the statute, but the present case is neither within its spirit nor its letter. Whether if the statute applied to the case, the judgment for the double value should not be diminished or credited by so much as the plaintiff had already received of the value of the goods, is a question which need not be decided, as we are satisfied that the statute referred to gives no support either to the judgment or the action.

From what has been said, it appears that if the fact in issue upon the replication, denying that the rent was due on the 31st of December, could have been decided for the plaintiff, such a decision would not have authorized a judgment for him on the first count, which is under the statute ; and that although it should have been decided for the defendant, this would not have entitled him to a judgment on the second count, which is merely for an

FRY
*vs*
BRECKINRIDGE.

judgment for double the value of the distress made. There must also be a sale before rent falls due, to authorize the double damages.

illegal taking, &c. And although the plaintiff might have been entitled to some damages under this count, yet as the damages were clearly fixed by the Court, not in reference merely to the actual injury and its circumstances, but according to a rule erroneously supposed to be furnished by the statute, we are of opinion that the judgment being founded upon this error and infected by it, is itself erroneous.

Wherefore, the judgment is reversed, and the cause is remanded for a new trial in conformity to this opinion.

*Robertson and Payne* for plaintiff; *Pindell* for defendant.